[No. D030264. Fourth Dist., Div. One. May 20, 1999.]

SCRIPPS HEALTH, Plaintiff and Respondent, v.
MEL M. MARIN, Defendant and Appellant.

**Counsel**

Hinchy, Witte, Wood, Anderson & Hodges and Cheryl Edwards Tannenberg for Defendant and Appellant.

McInnis, Fitzgerald, Rees & Sharkey, William M. Low and Arthur A. Wellman, Jr., for Plaintiff and Respondent.

## OPINION

**WORK, J.**—Mel M. Marin appeals an order enjoining him from contacting any Scripps Health employee or coming within 500 yards of a Scripps Health facility or institution. (Code Civ. Proc.,[1] § 527.8.) He challenges the issuance of the injunction on various grounds; however, we need only address his meritorious assertion the injunction violated public policy by being imposed under factual circumstances which did not establish a threat of future harm to the employees of Scripps Health. As we shall explain, in enacting section 527.8 the Legislature did not intend to alter the underlying nature and purpose of a prohibitory injunction and when such relief is accorded. Thus, to obtain a permanent injunction under section 527.8, subdivision (f), plaintiff must establish not only that defendant engaged in unlawful violence or made a credible threat of violence, but also that great or irreparable harm would result to an employee without issuance of the prohibitory injunction. Because the record lacks any evidence that Marin posed a threat of future harm to any Scripps Health employee, we accordingly reverse the order.

### Factual and Procedural Background

In 1997, Marin's mother, Eva Marinkovic, was a patient at Green Hospital of Scripps Clinic, whose employees are employed by Scripps Health. After her cardiac surgery, her treating physicians informed Scripps Health she was stable and suitable for discharge. Marin's sister, who was very concerned regarding the impending discharge of their mother from the hospital, contacted Marin. On behalf of his mother, Marin filed a power of attorney form for health care with the hospital and investigated the status of his mother's discharge. He filed a complaint with the Medical Review Board in Sacramento alleging the hospital was attempting to "dump" his mother from the hospital. He gave notice of his complaint to Nancy Quesnell, director of quality resource management/risk management, of his complaint. Both he and his father, Milivoy Marinkovic, objected to the discharge of Eva Marinkovic from the hospital.

On May 22, 1997, Marin and his father went to the hospital to drop off a copy of the complaint. Sheila Hale, a Scripps Health employee, contacted them and attempted to arrange a discussion regarding Eva Marinkovic's discharge plans. However, Marin was unable to do so, because he was on his way to court to be appointed guardian ad litem for his mother. He and his father returned later that afternoon and requested Hale for a meeting, advising her he intended to record the meeting. She advised Quesnell of their availability to meet, who in turn informed Marge Owens, administrator of medical/legal affairs for Scripps Clinic Medical Group. After a brief initial

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

meeting, Owens, Quesnell, Marin and his father entered an empty patient room to conduct the meeting. The room contained a bed, two chairs and a bathroom, with only one access door at the end of a small entry hallway. Upon entering the room, Marin produced a tape recorder and repeated his intent to record the meeting. Quesnell told Marin she would not permit the meeting to be recorded. Marin put away his tape recorder and declared that they would take care of this in writing. He then started to walk out of the room. At that point, Owens closed the door to the room and stated, "We need to discuss your mother." She positioned herself between Marin and the door, rendering it impossible for him to leave the room. Marin responded that there was nothing to talk about and that he was going to open the door. Owens replied again, "We really need to discuss your mother." He then pulled the door open, striking Owens with the door and pushing her into the wall. Marin, visibly angered, left the hospital premises with his father. Owens and Quesnell notified security. Quesnell immediately announced she intended to get a restraining order against Marin.

On May 23, 1997, Scripps Health petitioned for an injunction to prohibit Marin from harassing its employees under section 527.8,[2] alleging Marin had struck Owens with a door. Scripps Health concurrently applied for a

---

[2]Section 527.8, as enacted and applicable here, provided:

"(a) Any employer, whose employee has suffered unlawful violence or a credible threat of violence from any individual, which can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an injunction on behalf of the employee prohibiting further unlawful violence or threats of violence by that individual.

"(b) For the purposes of this section:

"(1) 'Unlawful violence' is any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but shall not include lawful acts of self-defense or defense of others.

"(2) 'Credible threat of violence' is a knowing and willful statement or course of conduct which would cause a reasonable person to believe that he or she is under threat of death or serious bodily injury, and which is intended to, and which actually causes, a person to believe that he or she is under threat of death or serious bodily injury, and which serves no legitimate purpose.

"(3) 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an employee to or from the place of work; entering the workplace; following an employee during hours of employment; telephone calls to an employee; correspondence with an employee, including, but not limited to, the use of the public or private mails, interoffice mail, fax, or computer e-mail.

"(c) Nothing in this section shall be construed to permit a court to issue a temporary restraining order or injunction prohibiting speech or other activities that are constitutionally protected, or otherwise protected by Section 527.3 or any other provision of law.

"(d) For purposes of this section, the terms 'employer' and 'employee' mean persons defined in Section 350 of the Labor Code. The term 'employer' also includes a federal agency, the state, a state agency, a city, county, or district, and a private, public, or quasi-public corporation, or any public agency thereof or therein. The term 'employee' also includes the members of boards of directors of private, public, and quasi-public corporations and elected and appointed public officers. For purposes of this section only, the term

temporary restraining order (TRO), ex parte, under that section, alleging Marin "may continue" to assault or batter an employee of Scripps Health. A TRO and an order to show cause re injunction were issued on May 23, with a hearing set for June 5. On May 27, Marin appeared ex parte and obtained an order vacating the TRO pending the order to show cause hearing. In doing so, the court relied on Marin's representation maintenance of the TRO could jeopardize his security clearance; however, the court conditioned the order on Marin's representation he would stay away from Scripps Health

'employee' also includes a volunteer or independent contractor who performs services for the employer at the employer's worksite.

"(e) Upon filing a petition for an injunction under this section, the plaintiff may obtain a temporary restraining order in accordance with subdivision (a) of Section 527, if the plaintiff also files an affidavit which, to the satisfaction of the court, shows reasonable proof that an employee has suffered unlawful violence or a credible threat of violence by the defendant, and that great or irreparable harm would result to an employee. A temporary restraining order granted under this section shall remain in effect, at the court's discretion, for a period not to exceed 15 days, unless otherwise modified or terminated by the court.

"(f) Within 15 days of the filing of the petition, a hearing shall be held on the petition for the injunction. The defendant may file a response which explains, excuses, justifies, or denies the alleged unlawful violence or credible threats of violence or may file a cross-complaint under this section. At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry. Moreover, if a person allegedly making threats is a current employee of the entity requesting the injunction, the judge shall receive evidence concerning the employer's decision to retain, terminate, or otherwise discipline the person. If the judge finds by clear and convincing evidence that the defendant engaged in unlawful violence or made a credible threat of violence, an injunction shall issue prohibiting further unlawful violence or threats of violence. An injunction issued pursuant to this section shall have a duration of not more than three years. At any time within the three months before the expiration of the injunction, the plaintiff may apply for a renewal of the injunction by filing a new petition for an injunction under this section.

"(g) Nothing in this section shall preclude either party from representation by private counsel or from appearing on his or her own behalf.

"(h) Upon filing of a petition for an injunction under this section, the defendant shall be personally served with a copy of the petition, temporary restraining order, if any, and notice of hearing of the petition.

"(i) The court shall order the plaintiff or the attorney for the plaintiff to deliver a copy of each temporary restraining order or injunction, or modification or termination thereof, granted under this section, by the close of the business day on which the order was granted, to the law enforcement agencies within the court's discretion as are requested by the plaintiff. Each appropriate law enforcement agency shall make available information as to the existence and current status of these orders to law enforcement officers responding to the scene of reported unlawful violence or a credible threat of violence.

"(j) Any intentional disobedience of any temporary restraining order or injunction granted under this section is punishable pursuant to Section 273.6 of the Penal Code.

"(k) Nothing in this section shall be construed as expanding, diminishing, altering, or modifying the duty, if any, of an employer to provide a safe workplace for employees and other persons.

"(l) The Judicial Council shall develop forms, instructions, and rules for scheduling of hearings and other procedures established pursuant to this section. The forms for the petition and response shall be simple and concise." (Stats. 1994, First Ex. Sess. 1993-1994, ch. 29, § 2.)

facilities pending the factual hearing. For the next two months, no restraining order was in effect and there were no acts or threats of violence by Marin at anytime during this period.

On July 24, the evidentiary hearing was held. Upon completion, counsel for Scripps Health argued the evidence supported a finding Marin had pushed Owens into the wall, slammed the door against her and then thrown his body into the door. He asserted an injunction was needed because Marin's past behavior, his allegations Scripps Health had failed to adequately care for his mother, and the threat he might cause harm to Scripps's Health employees if, in the future, anything happens to his mother that he relates to her release from the hospital. Counsel for Scripps Health had earlier acknowledged that because Eva Marinkovic had her health insurance coverage transferred to the Sharp Healthcare, there is no reason for her to be a patient at a Scripps Health facility except if she has an emergency.[3] The court stated it found clear and convincing evidence that Marin "was the precipitating cause of an act of unlawful violence within the mean of . . . section 527.8" and "responsible for the injury to [Owens]." The court imposed a three-year permanent injunction against Marin precluding him from making contact with any employee of Scripps Health or to telephone or send any messages or communications to Scripps Health employees except through counsel or through an intermediary. The court further ordered Marin to remain 500 yards away from any Scripps Health facility or institution, unless he has a medical emergency and is taken to a Scripps facility. The court denied his request he be permitted to use the facilities at University of California at San Diego except for the library on the campus. The order was entered on October 30.[4] Marin timely appealed.

### The Injunction Was Improperly Issued

Marin contends the injunction against him violates the codified public policy of imposing injunctive relief only where there is a threat of future harm to the plaintiff, not as a remedy for a single past incident. Scripps Health responds by asserting that no showing of future harm is necessary as a finding of any past "unlawful violence" requires the issuance of an injunction under section 527.8, subdivision (f).[5] It asserts that once the court finds by clear and convincing evidence a defendant was the precipitating

---

[3]Scripps Hospital is the level one trauma center serving the Pacific Beach area where the Marinkovics reside.

[4]On November 14, Marin unsuccessfully moved to vacate the order on the basis he had a complete defense by trying to free himself from being falsely imprisoned by Scripps Health employees.

[5]Scripps Health can make this argument because subdivision (b)(1) of section 527.8 defines " 'unlawful violence' " as including "any assault or battery."

cause of an act of unlawful violence within the meaning of section 527.8, subdivision (f), the plaintiff is entitled to an injunction. (See 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 331, p. 264; 38 Cal.Jur.3d (rev.) Injunctions, § 45, p. 621.) However, as we shall explain, the Legislature did not intend, in enacting section 527.8, to alter the underlying nature and purpose of a prohibitory injunction and when such relief is accorded. To obtain a permanent injunction under section 527.8, subdivision (f), a plaintiff must also establish great or irreparable harm would result to an employee without issuance of the prohibitory injunction because of the reasonable probability the wrongful acts will be repeated in the future.

More specifically, Scripps Health asserts the language in section 527.8, subdivision (f) is clear that once the court finds by clear and convincing evidence the defendant engaged in unlawful violence or made a credible threat of violence, "an injunction shall issue prohibiting further unlawful violence or threats of violence." It argues this language removes from the court any discretion to deny the relief requested. It contrasts this language to that of section 527.8, subdivision (e), which provides the plaintiff "may obtain" a TRO if it shows "to the satisfaction of the court" reasonable proof of unlawful violence and a threat of great or irreparable harm. Scripps Health thus argues that the Legislature intended to leave the determination of whether to grant or deny a TRO to the discretion of the trial court, but not so as to the issuance of a permanent injunction. (See § 527.8, subd. (f).) In summary, according to Scripps Health, to obtain temporary injunctive relief before the hearing under section 527.8, subdivision (e), a plaintiff must show a defendant committed an act of unlawful violence, and a threat of great or irreparable harm; but, to obtain a permanent injunction after a full hearing, a plaintiff must show by clear and convincing evidence a defendant engaged in unlawful violence or made a credible threat of violence. Consequently, Scripps Health asserts that under the plain language of the statute, no separate showing of a threat of future harm is required in order to obtain a permanent injunction.

Preliminarily, where the statutory language in dispute is clear and unambiguous, there is no need for construction and the judiciary should not indulge in it. (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) However, if the statutory language is not so clear, "[i]t is our task to construe, not to amend, the statute." (*Ibid.*) In construing a statute, it is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included. In other words, the courts "may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*Ibid.*)

■ Where we must construe a statutory provision, we are guided by the firmly established principles governing statutory interpretation: " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read so as to conform to the spirit of the act." [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' " (*People* v. *Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310], quoting *People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].)

■ We grant that at first glance the express language of section 527.8, subdivision (f) appears to provide that once the trial court finds by clear and convincing evidence a defendant has engaged in an act of unlawful violence a permanent injunction shall issue prohibiting further unlawful violence. However, a closer look at the subdivision within the context of the entire statute, its underlying legislative intent and the nature of injunctive relief, persuades us such a literal interpretation cannot be given to the disputed statutory language. Indeed, by harmonizing that subdivision with the remainder of section 527.8, it becomes evident that before an injunction shall issue the court must find by clear and convincing evidence that to not issue the injunction would subject the targeted employee to great or irreparable harm, or in other words further unlawful violence or the threat thereof.

■ Preliminarily, the express codified purpose of a prohibitory injunction is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act. (Civ. Code, § 3420; Code Civ. Proc., § 525.) Consequently, injunctive relief lies only to prevent threatened injury and has no application to wrongs that have been completed. (*Gold* v. *Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 372 [122 Cal.Rptr. 732].) It should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future. Indeed, a change in circumstances at the time of the hearing, rendering injunctive relief moot or unnecessary, justifies denial of the request. (*Cisneros* v. *U.D. Registry, Inc.* (1995) 39 Cal.App.4th 548, 574 [46 Cal.Rptr.2d 233]; *Donald* v. *Cafe Royal, Inc.* (1990) 218 Cal.App.3d 168, 184 [266 Cal.Rptr. 804].) Moreover, not only can injunctive

relief be denied where the defendant has voluntarily discontinued the wrongful conduct (*Cisneros* v. *U.D. Registry, Inc., supra,* 39 Cal.App.4th at p. 574), there exists no equitable reason for ordering it where the defendant has in good faith discontinued the proscribed conduct (*People* v. *National Association of Realtors* (1981) 120 Cal.App.3d 459, 476 [174 Cal.Rptr. 728, 22 A.L.R.4th 79]). "Thus, to authorize the issuance of an injunction, it must appear with reasonable certainty that the wrongful acts will be continued or repeated." (*Gold* v. *Los Angeles Democratic League, supra,* 49 Cal.App.3d at p. 372.)

The Legislature has declared the availability of injunctive relief in particular situations in a series of statutes (see 6 Witkin, Cal. Procedure, *supra,* Provisional Remedies, § 293, pp. 233-234), such as where there is a threat of waste or injury to public funds or property (§ 526a), where there is a threat of interference with collective bargaining activities (§ 527.3) or where there is a threat of harm due to harassment (§ 527.6), group violence (§ 527.7)[6] or violence towards employees at the workplace (§ 527.8). At the time section 527.8 was enacted, section 527.6 prevented harassment when there has been a knowing and willful course of conduct directed at a specific person which annoys or harasses the person and serves no legitimate purpose. The reasonable construction of this harassment provision required the applicant to establish a course of conduct giving rise to a threat of future harm necessitating injunctive relief. In other words, the course of conduct must be ongoing at the time the injunction is sought, as a single incident of harassment does not constitute a course of conduct entitling the applicant to injunctive relief. (*Leydon* v. *Alexander* (1989) 212 Cal.App.3d 1, 4 [260 Cal.Rptr. 253].)[7]

Section 527.8 was enacted in 1994 to establish parallel provisions to section 527.6.[8] It authorized any employer to pursue a TRO and an injunction on behalf of its employees to prevent threats or acts of violence by either another employee or third person. Given that section 527.6 only allowed injunctive relief for natural persons (see *Diamond View Limited* v. *Herz* (1986) 180 Cal.App.3d 612, 618-619 [225 Cal.Rptr. 651]), section 527.8 was enacted to allow a corporate employer to bring such an action on behalf of an employee. Section 527.8 was thus intended to enable employers

---

[6]Section 527.7 provides for injunctive relief to prevent future acts of violence when there is evidence a group of persons has met and taken substantial action in furtherance of the commission of an act of violence and will engage in such acts in the future.

[7]Section 527.6 was amended in 1998 to parallel the provisions of section 527.8 regarding the definitions of " '[u]nlawful violence,' " " '[c]redible threat of violence' " and " '[c]ourse of conduct.' " (Stats. 1998, ch. 581, § 2.)

[8]Indeed, the early versions of Assembly Bill No. 68 (1993-1994 First Ex. Sess.) in 1994 paralleled the precise language, terminology and process in section 527.6, including the definitions of " 'harassment' " and " '[c]ourse of conduct.' "

to seek the same remedy for its employees as section 527.6 provides for natural persons. The express intent of the author of the legislation was to address the growing phenomenon in California of workplace violence by providing employers with injunctive relief so as to *prevent* such acts of workplace violence. (Sen. Rules Com., 3d reading analysis of Assem. Bill No. 68 (1993-1994 First Ex. Sess.) Aug. 31, 1994; Assem. Bill No. 68, Concurrence in Sen. Amends. (1993-1994 First Ex. Sess.) Aug. 31, 1994; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 68 (1993-1994 First Ex. Sess.) as amended June 30, 1994.)

Consistent with the foregoing, section 527.8, subdivision (a) expressly declares the Legislature's intent to provide employers with traditional prohibitory injunctive relief on behalf of their employees who have suffered unlawful violence or a credible threat of such violence from facing more in the future. Section 527.8, subdivision (a) states: "Any employer, whose employee has suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an injunction on behalf of the employee prohibiting further unlawful violence or threats of violence by that individual." As summarized earlier, section 527.8, subdivision (e) provides that a plaintiff may obtain a TRO if it files an affidavit establishing reasonable proof an employee has suffered unlawful violence or a credible threat of violence by a defendant and that great or irreparable harm would result to an employee. This latter requirement requires a plaintiff to show to the satisfaction of the court it is likely that harm will occur from future unlawful violence in the absence of a restraining order. The parties do not dispute this interpretation of section 527.8, subdivision (e), as it is consistent with the express language of section 527.8, subdivision (a) and the cited underlying legislative intent.

In this light, to read literally the language of section 527.8, subdivision (f) would result in the absurd consequence of placing a greater burden of proof on a plaintiff to obtain an ex parte TRO than a permanent injunction. A TRO, like a preliminary injunction, is by design to preserve the status quo pending the evidentiary hearing to determine whether to issue a permanent injunction. (*California State University, Hayward* v. *National Collegiate Athletic Assn.* (1975) 47 Cal.App.3d 533, 543 [121 Cal.Rptr. 85].) Scripps Health would have us read section 527.8, subdivision (f) in a vacuum, relying on the literal meaning of the language that once the court finds by clear and convincing evidence a defendant engaged in unlawful violence then a permanent injunction must issue, while ignoring the requirement under section 527.8, subdivision (e) that for a TRO to issue a plaintiff must show great or irreparable harm would result to the employee due to the

likelihood the unlawful violence will recur. Common sense does not permit us to do so. Indeed, the Legislature attached the same interpretation we do to the language in dispute, declaring "[a]n injunction shall issue if the judge is persuaded, by clear and convincing evidence, that violence, or the threat of violence, exists." (Assem. Bill No. 68, Concurrence in Sen. Amends. (1993-1994 First Ex. Sess.) Aug. 31, 1994, p. 2.) In other words, at the time of the hearing a plaintiff must show unlawful violence or a threat of violence exists requiring the issuance of a prohibitory injunction.

Our review of the underlying legislative history and documents relevant to the enactment of section 527.8 has disclosed no evidence of a legislative intent to alter the traditional nature of prohibitory injunctive relief in this setting. Rather, it is quite clear the Legislature intended to provide employers with the remedy of injunctive relief to protect their employees by preventing unlawful violence where it is reasonably likely such unlawful violence may occur in the future. Accordingly, to obtain a permanent injunction under section 527.8, subdivision (f), a plaintiff must establish by clear and convincing evidence not only that a defendant engaged in unlawful violence or made credible threats of violence, but also that great or irreparable harm would result to an employee if a prohibitory injunction were not issued due to the reasonable probability unlawful violence will occur in the future.[9]

---

[9]Scripps Health asserts this interpretation renders the statute "impractical, meaningless, and illogical." We disagree. Our interpretation, which does indeed apply the clear and convincing evidence standard, does not make it virtually impossible for a plaintiff to establish the necessary likelihood a defendant would "misbehave" in the future. The clear and convincing evidence standard is offset by the nature of the challenged required finding of the reasonable probability unlawful violence will occur in the future. Additionally, Scripps Health's assertion our interpretation is illogical because a defendant was found to have made a credible threat of violence would be more likely to be enjoined than a defendant who actually committed an unlawful violent act is without merit. Rather, the determination of whether it is reasonably probable an unlawful act will be repeated in the future rests upon the nature of the unlawful violent act evaluated in the light of the relevant surrounding circumstances of its commission and whether precipitating circumstances continue to exist so as to establish the likelihood of future harm. Finally, Scripps Health's argument this interpretation would render meaningless the disjunctive language of section 527.8, subdivision (f) of "unlawful violence or . . . a credible threat of violence" is unpersuasive. As to the former, the requirement of establishing the reasonable probability wrongful acts, or simply unlawful violence, will occur in the future guarantees that injunctive relief will be issued to prevent future harm instead of punishing past completed acts. As to the latter, requiring a showing of a continued threat of unlawful violence ensures that injunctive relief will be meaningfully imposed when necessary to prevent wrongful acts in the future. Accordingly, our interpretation does not render "impractical, meaningless, or illogical" the express language of section 527.8, subdivision (f), but rather obtains the reasonable legislative intent underlying it.

*The Record Lacks Substantial Evidence Marin Is Likely to Commit Further Acts of Violence Against Any Scripps Health Employee*

■ Marin correctly asserts there is no evidence establishing he is likely to commit further acts of violence against Scripps Health employees. Consistent with our interpretation of section 527.8, subdivision (f), the permanent injunction could only issue here if the evidentiary record establishes the reasonable probability Marin's wrongful acts would be repeated in the future. There is no such evidence.

At the outset of the evidentiary hearing, counsel for Scripps Health acknowledged there had been no prior threats of violence or any subsequent threats of violence by Marin against any employees of Scripps Health and that they were there only because of the alleged assault and battery upon Owens. The TRO was vacated four days after its issuance based on Marin's express representation he would stay away from Scripps Health facilities pending the evidentiary hearing, leaving him unrestrained during the approximately two months before the evidentiary hearing. During this time, Scripps Health acknowledged Marin's mother again was taken to a Scripps Health facility and remained overnight before being discharged. Marin made no threats of violence or caused any violence while his mother was a patient at the facility. Thereafter, his mother transferred her health insurance to Sharp Healthcare, rendering it unlikely she would have to return as a patient to a Scripps Health facility. Consequently, given the circumstances surrounding this single incident, the evidentiary record does not establish the likelihood Marin would repeat any violent acts against Scripps Health employees. Accordingly, the order granting the permanent injunction must be reversed.

## DISPOSITION[10]

The order is reversed. Appellant is awarded costs on appeal.

Kremer, P. J., and McDonald, J., concurred.

---

[10]In light of our disposition, we do not address Marin's remaining contentions.