Filed 4/29/13  Tatro v. Wessels CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SUE A. TATRO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHELLY K. WESSELS,<br><br>    Defendant and Appellant. | H037972<br>(Santa Clara County<br>Super. Ct. No. DV015454) |

Defendant Shelley K. Wessels appeals from an order granting plaintiff Sue A. Tatro's application for a restraining order under the Domestic Violence Prevention Act (DVPA) (Fam. Code, §6200 et seq.).  Defendant contends that the trial court erred by failing to make a finding that future acts of abuse were reasonably probable such that great or irreparable harm was likely if the order was not issued.  She also contends that there was no evidence to support such a finding.[1]  We find no error and affirm the order.

**I.  Statement of Facts**

At the time of the hearing, plaintiff and defendant were married but had not filed for dissolution.  They separated on October 21, 2011.  On December 22, 2011, plaintiff filed an application for an ex parte temporary restraining order against defendant.  In her

---

[1]    Plaintiff has not filed a brief.

application, she stated that she had been physically abused, threatened, and harassed by defendant. Plaintiff further stated that on December 12, 2011, defendant showed up at plaintiff's classroom, refused to leave, followed plaintiff to her car, entered the car and screamed, "Take me to the hospital! I'm going to kill myself!" Defendant also said, "It will be a murder-suicide, because no one else is going to have you." After plaintiff slapped defendant, defendant punched plaintiff's nose and forehead four or five times with her fist. Plaintiff suffered swelling and pain in her forehead and nose due to injuries inflicted by defendant. Defendant denied that the incident occurred. Plaintiff further alleged that defendant verbally abused plaintiff during their relationship, showed up at her place of employment and refused to leave, frequently threatened to assault her since September 2008 as well as threatened suicide since June 2006. Defendant also repeatedly made telephone calls and sent texts and e-mails to plaintiff, followed her around school where they both worked, chased her in a golf cart, slept outside a residence where plaintiff was staying, telephoned plaintiff's mother and brother, and solicited personal information from plaintiff's employer's office.

The trial court issued a temporary restraining order and set the matter for hearing.

Defendant filed an answer in which she denied the allegations in the petition. She also attached telephone records and a letter that she sent to plaintiff. Defendant subsequently filed an amended answer and attached telephone records.

Plaintiff filed a supplemental declaration in which she alleged violations of the temporary restraining order. She stated that defendant's "claims that the murder/suicide threat did not happen terrify" her. Plaintiff also stated that defendant e-mailed her and called her cell phone, followed her home from school, repeatedly said she would "die for" her, parked outside her residence and refused to leave, and "tried many times to get [her] to agree to a suicide pact."

On January 20, 2012, the trial court held a hearing. Plaintiff testified that the information in her original and supplemental declarations was correct. On cross-

examination, plaintiff testified that she spent more than two hours with defendant after she punched her on December 12, 2011.  They held hands and plaintiff agreed to call defendant on Sundays.  There were no witnesses to the incident and plaintiff did not call the police, and she did not seek medical attention.  Plaintiff refused to give defendant her new address even though defendant told her that she wanted to serve legal papers.  Defendant eventually served plaintiff at school.  Plaintiff explained:  "My professional life depends on my being able to stay working and for her to follow me around screaming and take golf carts and stand in a parking lot screaming that she's going to kill herself reflects on me incredibly."

Plaintiff testified that defendant admitted hitting her and following her home, but did not admit that she would murder her and kill herself.  Plaintiff further testified, "I don't think she's ever meant to harm me, but I don't think she's able to know what she might do.  And I'm afraid for my safety from her."  She explained that she filed an application for a restraining order due to defendant's irrational behavior.  Plaintiff also testified that she did not think defendant was "capable of saying what she would or wouldn't do.  And it should be obvious here that there's a pattern of pushing that I don't think can be resolved with something like dropping of the restraining order because I don't think she's well enough to say that she won't harm me, even though I don't think she wants to harm me."

Defendant denied that she intended to hit or hurt plaintiff, but may have hit her accidentally.  Defendant did not recall making a "murder/suicide threat."  Defendant testified that she had a history of making suicide threats but she had promised plaintiff that she would not do so.  According to defendant, she kept that promise to plaintiff.

Following the hearing, the trial court granted plaintiff's application for a restraining order for two years.  Defendant filed a timely notice of appeal.

## II. Discussion

The DVPA was enacted "to prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code, §§ 6200, 6220.) Domestic violence is defined by the DVPA as "abuse" of certain persons, including a spouse. (Fam. Code, § 6211.) "[A]buse" is defined by the DVPA as any of the following: "(a) Intentionally or recklessly to cause or attempt to cause bodily injury. [¶] (b) Sexual assault. [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (d) To engage in any behavior that has been or could be enjoined pursuant to Section 6320." (Fam. Code, § 6203.) A party may be enjoined under Family Code section 6320 "from molesting, attacking, striking, stalking, threatening, . . . harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." (Fam. Code, § 6320, subd. (a).)

"An order may be issued under this part, with or without notice, to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit or, if necessary, an affidavit and any additional information provided to the court pursuant to Section 6306, shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (Fam. Code, § 6300.)

This court reviews a grant of injunctive relief under the abuse of discretion standard. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420 (*Gonzalez*).) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the

reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]"  (*Id.* at p. 420.)

Here, defendant threatened to kill plaintiff and punched her nose and forehead four or five times with her fist.  Since September 2008 defendant had frequently threatened to assault plaintiff.  She also repeatedly made telephone calls and sent texts and e-mails to plaintiff, followed her around the school where they both worked, chased her in a golf cart, slept outside a residence where plaintiff was staying, and solicited personal information from plaintiff's employer's office.  After the trial court issued a temporary restraining order, defendant e-mailed plaintiff and called her cell phone, followed her home from school, said she would "die for" her repeatedly, parked outside her residence and refused to leave, and "tried many times to get [her] to agree to a suicide pact."  Since this conduct falls within the statutory definition of abuse, the trial court did not abuse its discretion in granting the application for a restraining order.

Relying on *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324 (*Scripps*) and *Russell v. Douvan* (2003) 112 Cal.App.4th 399 (*Russell*), defendant contends that the DVPA requires a showing that future acts of abuse are reasonably probable such that the victim is likely to suffer great or irreparable harm.

*Scripps* involved the interpretation of Code of Civil Procedure section 527.8, which allows an employer to seek an injunction against harassment of an employee. (*Scripps*, *supra*, 72 Cal.App.4th at p. 327.)  The Court of Appeal held that "to obtain a permanent injunction under section 527.8, subdivision (f), a plaintiff must establish by clear and convincing evidence not only that a defendant engaged in unlawful violence or made credible threats of violence, but also that great or irreparable harm would result to an employee if a prohibitory injunction were not issued due to the reasonable probability unlawful violence will occur in the future."  (*Id.* at p. 335.)  Relying on *Scripps*, *Russell* held that Code of Civil Procedure section 527.6, which allows a person to seek an

injunction against harassment, also requires a finding of future harm.  (*Russell*, *supra*, 112 Cal.App.4th at p. 400.)

We reject defendant's contention that the reasoning of *Scripps* and *Russell* is applicable to the present case.  "Family Code section 6300 has been interpreted to permit a trial court 'to issue a protective order under the DVPA simply on the basis of an affidavit showing past abuse.'  [Citation.]  The DVPA . . . permit[s] issuance of protective orders on a different, broader basis than permitted under Code of Civil Procedure sections 527.6 and 527.8.  [Citation.]  Additionally, a lower level of proof is required for issuance of a protective order under the DVPA . . . —a preponderance of the evidence, rather than clear and convincing evidence.  [Citations.]"  (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137.)  Since the DVPA provides a party with broader protection and requires a lesser standard of proof than Code of Civil Procedure sections 527.6 and 527.8, *Scripps* and *Russell* are not analogous to the present case.

Even assuming that a finding of future acts of abuse are reasonably probable such that the victim is likely to suffer great or irreparable harm was required, we reject defendant's contention that there was insufficient evidence to support such a finding.  Based on the evidence of defendant assaulting plaintiff as well as repeatedly threatening, harassing, telephoning, and contacting her, there was substantial evidence that there was a reasonable probability that defendant would engage in future acts that were likely to cause plaintiff to suffer great or irreparable harm.

Defendant argues that plaintiff did not feel threatened because she stayed in the car at least two hours after defendant "allegedly struck" her, agreed to future weekly phone calls, and had contact with defendant "via e-mail and in person."  She also asserts that there was no history of abuse, the e-mail contact was nonthreatening, and she did not threaten plaintiff when she chased her with a golf cart.  Here, however, the trial court specifically found that there had been "abuse and threats of abuse as defined by the

Family Code."  This court is bound by this finding.  (*Gonzalez*, *supra*, 156 Cal.App.4th at pp. 420-421.)

## III.  Disposition

The order is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Márquez, J.