Filed 7/15/13  Cahill Contractors v. Carpenter CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| CAHILL CONTRACTORS, INC.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DeBRAY CARPENTER,<br><br>    Defendant and Appellant. | A136199<br><br>(City & County of San Francisco<br>Super. Ct. No. CCH-12-573310) |

Defendant DeBray Carpenter appeals from the trial court's order enjoining him from committing further acts of violence or making further threats of violence against an employee of plaintiff, Cahill Contractors, Inc.  He contends the court violated his constitutional rights to free speech, and that the findings against him were not supported by sufficient evidence that he had made a credible threat.  We find no error and therefore affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a construction firm presently engaged in the construction of a low-income housing project in the Hunters Point neighborhood in San Francisco.

On April 10, 2012, plaintiff filed a petition for a workplace violence restraining order under Code of Civil Procedure section 527.8,[1] seeking an injunction prohibiting defendant from committing acts of violence or making threats of violence against one of its employees, Chris Parker.  Parker is employed by plaintiff as a senior project manager.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Plaintiff submitted Parker's declaration in support of its petition. In his declaration, Parker indicated that defendant and his father, Claude Carpenter (Carpenter), had repeatedly entered plaintiff's jobsite without permission to discuss their concerns about the local community and economic development. Parker had first met Carpenter at a tenant association meeting in November 2011. Subsequently, Carpenter told Parker that his company had made an unsuccessful bid on a painting contract for the Hunters Point project. At Carpenter's request, Parker looked into why his bid was not accepted. Parker learned that the bid was very high. Several companies had submitted lower bids, including the company that was selected for the job. Parker conveyed this information to Carpenter.

On March 12, 2012, Carpenter made an unannounced visit to the jobsite and stated to Parker that in order to get the "results" he was hoping for with respect to the project, the project would have to be "shut down."

On March 30, 2012, Carpenter, defendant, and an unidentified woman entered the jobsite and set up a camera in front of the trailer where Parker's office is located. They then entered the trailer. Parker explained that cameras are not allowed on the property and that they needed to leave. At that point, defendant pulled out his cell phone, pointed it at Parker's face, and stated in a loud voice that he could record whatever he wanted to and that he would not leave. He began filming Parker with the cell phone's camera. Defendant was aggressive and belligerent, repeatedly threatening to have the worksite shut down. He said words to the effect that he could have 40 men come to the jobsite to shut it down whenever he wanted.

On April 6, 2012, Carpenter and defendant again came on to the jobsite, and approached Parker while he was talking on his cell phone in front of the trailer. Defendant became angry almost immediately and began swearing at Parker in a loud voice. Parker asked defendant to stop swearing at him and, when he failed to do so, Parker asked him to leave. Defendant again pulled out his cell phone and began filming Parker. Parker objected and again asked him to leave. Defendant threatened to shut down the jobsite. At some point during the encounter, defendant said, "I'm going to kick

your ass." He let out a stream of threats, calling Parker a "punk ass little bitch" and stating "I'm going to take you down." Defendant continued to yell and swear at Parker until he finally left the jobsite with Carpenter.

On May 2, 2012, a hearing was held on plaintiff's petition. The parties agreed that the trial court could view the two cell phone videos defendant had taken, which he had subsequently posted on YouTube. Plaintiff's counsel characterized defendant as "a man who can mobilize his community," and who "uses social media to his advantage." The attorney noted that in January 2012, defendant had interrupted a meeting on the jobsite and had taken a photograph that he later posted on his Twitter account. Defendant included the caption: "All White subcontractors, cept one sellout Uncle Tom, with a joint venture contract up here working on West Point pjs." The March 30th video was posted on his YouTube page under the heading "The struggle for an equal opportunity in our hood." The cell phone video taken on April 6th was posted under the caption, "George Zimmerman of construction feels threatened." Plaintiff's counsel asked the court to take judicial notice of George Zimmerman, who is widely known as the man who shot and killed an unarmed African-American teenager named Trayvon Martin in Florida.

Parker testified in accordance with his declaration. A coworker also testified that during the April 6th incident he heard raised voices and profanity, and had walked outside to see what was happening. Defendant was screaming and yelling at Parker, saying something to the effect of "I'll beat your fucking ass." Defendant had his cell phone out and became increasingly hostile, although the witness did not see any physical contact. Carpenter appeared to intervene and helped defendant leave the property. At the hearing, defendant admitted to having threatened to shut the jobsite down on numerous occasions. But he denied ever having threatened Parker personally.

Carpenter testified that on the day of the incident, he had gone to Parker's workplace to discuss whether any members of the community had been hired as apprentice carpenters to work on the project. Parker began explaining that groups of community members had been coming onto the property and entering the trailer, and he advised Carpenter not to bring anybody else to the trailer again. Defendant objected and

Parker asked him to get off the property. Defendant told Parker that he was born in the neighborhood and comes from that area, and that Parker was the one who needed to get off the property. This was intended as a "political" statement, not a threat of physical action. Parker asked if defendant was threatening him, and stated he would call the police if they did not leave. At that point defendant took out his camera and began to record the encounter.

After the trial court viewed the two YouTube videos, it questioned plaintiff's counsel as to the scope of defendant's First Amendment rights. Counsel argued that by analogizing Parker to Zimmerman, defendant was inciting the community, which is predominately African-American, to take retaliatory action against Parker. The court gave the parties three weeks to file briefs on whether defendant had forfeited his First Amendment rights by inciting violence. The court indicated that if it determined defendant did not enjoy a First Amendment right to materials he had posted on the Internet, and if these materials were deemed to be part of a credible threat, then the court would likely issue the requested restraining orders.

A second hearing was held on May 30, 2012. After considering the arguments of the parties, the trial court issued its order restraining defendant from contacting Parker, including an order to stay away from Parker's workplace. Defendant was also ordered to remove from all social media any videos or statements "referring to or characterizing Chris Parker as 'George Zimmerman,' and refrain from making any such statements during the pendency of this order." The order expires on November 30, 2013. The court indicated that it had considered the "Zimmerman" video in deciding whether a credible threat had been made. This appeal followed.

## DISCUSSION

### I. Generally Applicable Legal Principles

Section 527.8 "authoriz[es] any employer to pursue . . . an injunction on behalf of its employees to prevent threats or acts of violence by either another employee or third person." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 333.) Section 527.8 was "intended to enable employers to seek the same remedy for its employees as section

4

527.6 provides for natural persons." (*Scripps, supra,* at pp. 333–334.) "The express intent of the author of the legislation was to address the growing phenomenon in California of workplace violence by providing employers with injunctive relief so as to *prevent* such acts of workplace violence." (*Id.* at p. 334; accord *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1258 (*Huntingdon Life*).)

Specifically, section 527.8, subdivision (a) states: "Any employer, whose employee has suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an injunction on behalf of the employee and, at the discretion of the court, any number of other employees at the workplace . . . ." If there is good cause to grant the petition, the court must hold a hearing and "receive any testimony that is relevant and may make an independent inquiry." (§ 527.8, subd. (j); see § 527.8, subd. (h).) "If the judge finds by clear and convincing evidence that the [defendant] engaged in unlawful violence or made a credible threat of violence, an injunction shall issue prohibiting further unlawful violence or threats of violence." (§ 527.8, subd. (j).) A section 527.8 protective order must be limited to a three-year period and cannot be issued if it "prohibit[s] speech or other activities that are constitutionally protected . . . ." (§ 527.8, subds. (c), (k)(1).)

A trial court's "decision to grant a permanent injunction rests within its sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion." (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.) When the trial court resolves disputed factual issues, and draws inferences from the presented facts, an appellate court reviews the factual findings under a substantial evidence standard. (*Ibid.*; *USS-Posco Industries v. Edwards* (2003) 111 Cal.App.4th 436, 444 (*USS-Posco*).)

## II. Sufficiency of the Evidence and Constitutionally Protected Activity

Defendant contends there was insufficient evidence to support the trial court's finding that he made a credible threat of violence supporting the issuance of a section

5

527.8 restraining order. He claims the April 6, 2012 confrontation was, at best, a single threatening act that alone could not justify such an order. He notes he had several prior encounters with Parker that did not involve violence or threats of violence. Therefore, he asserts the court's conclusion that there was a risk of violence occurring in the future was not supported by clear and convincing evidence. He also objects to the trial court's consideration of his "protected" speech, claiming that his comparison of Parker to Zimmerman was mere "political hyperbole" that could not be used as evidence to support the issuance of the restraining order.

As noted above, before issuing a protective order under section 527.8, a court must find by "clear and convincing evidence" the defendant has committed violence or has made a "credible threat of violence." (§ 527.8, subd. (j).) A " '[c]redible threat of violence' is a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (§ 527.8, subd. (b)(2).) " 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an employee to or from the place of work; entering the workplace; following an employee during hours of employment; making telephone calls to an employee; or sending correspondence to an employee . . . ." (§ 527.8, subd. (b)(1).)

In determining whether substantial evidence supports a section 527.8 finding, we must "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630; see *USS-Posco, supra,* 111 Cal.App.4th 436, 444.) "It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Howard, supra,* at pp. 630–631.) If substantial evidence is present, "no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a

general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing." (*Id.* at p. 631.)

Under these legal principles, we conclude the court's findings are supported by substantial evidence. The record contains evidence showing defendant made numerous statements that, when considered together, can be reasonably interpreted as a knowing or willful statement of threatened violent conduct, and that he engaged in a pattern of conduct that can be reasonably interpreted as reflecting an intent to communicate these threats to Parker. Specifically, the evidence showed that defendant entered the jobsite numerous times without prior permission. He candidly admitted in court that he had confronted Parker on multiple occasions by threatening to have the jobsite shut down. He told Parker that he had 40 men available to him to assist him in this effort. On two occasions, he took unauthorized videos of Parker by placing a cell phone within a few feet of his face, later posting the videos publicly on his YouTube account. In posting the second video, he analogized Parker to Zimmerman in a manner designed to inflame racial tensions. Finally, there was evidence that he had verbally abused Parker and threatened to "kick [Parker's] ass."

Thus, contrary to defendant's assertions on appeal, more than just a single act led to the issuance of the instant restraining order. The evidence showed defendant committed a series of acts that were escalating in aggressiveness towards Parker. And while there was conflicting evidence as to what occurred during the final confrontation, under the standard of review that we must follow, we may not reweigh the evidence that was presented.

As to defendant's assertion of his constitutional right to freedom of speech, it is settled that injunctive relief is appropriate where a defendant's speech includes a credible threat of violence. Section 527.8 states that a court is not "permit[ted] . . . to issue [an] injunction prohibiting speech or other activities that are constitutionally protected . . . ." (§ 527.8, subd. (c).) However, "The right to free speech is not absolute or unlimited." (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 536 (*Garbett*).) The courts have thus held that "if the elements of section 527.8 are met by the expression of a

7

credible threat of violence toward an employee, then that speech is not constitutionally protected and an injunction is appropriate." (*Id*., at p. 537.)

The *Garbett* case concerned an individual who frequently visited city offices and disrupted council meetings, and claimed that the mayor and police were trying to kill him. After he talked about a shooting incident that had occurred at a council meeting in another city and mentioned the names of notorious mass murderers, the city obtained injunctive relief pursuant to section 527.8. (*Garbett, supra,* 190 Cal.App.4th 526, 531–532, 536.) The appellate court stated the rule that a credible threat of violence toward an employee was not constitutionally protected speech. (*Id.* at p. 537.) The court then found that the evidence supported findings that the defendant had made a credible threat, regardless of his subjective intent. (*Id.* at pp. 538–539.)

In support of its conclusions, the *Garbett* court relied on *Huntingdon Life.* (*Garbett, supra,* 190 Cal.App.4th 526, 540.) In *Huntingdon Life,* the appellate court found the defendants' publications on a Web site constituted credible threats of violence within the meaning of both sections 527.6, subdivision (b)(2) and 527.8, subdivision (b)(2). The defendants, who were animal rights activists, engaged in such activities as publishing the home addresses of the employer's employees on its Web site and making threats of home visits. The *Huntingdon* court held that the plaintiff had demonstrated a probability of prevailing under these harassment provisions, thereby defeating the defendants' anti-SLAPP motion. (*Huntingdon Life, supra,* 129 Cal.App.4th 1228, 1258–1259.)

While defendant claims his posting on YouTube would not cause a reasonable person to understand the statement to be a serious expression of an intent to commit an act of unlawful violence, the video and its caption must be understood in the context of his entire course of conduct, and from the point of view of a reasonable person in Parker's position. The evidence established that defendant had a history of harassing and making workplace-related threats to Parker at the Hunters Point jobsite. The conduct had escalated over time, culminating in a threat of physical violence. The credibility of the threat was enhanced by defendant's use of social media. The video in question

8

specifically targets Parker, both by capturing his image and his voice, and analogizes him to a known killer, thereby placing him in the position of a figure deserving of retribution. Taken in light of all the surrounding circumstances, the trial court properly concluded that defendant's speech activities do not trump Parker's safety or plaintiff's duty to provide him with a safe workplace.

We observe that under the trial court's order defendant retains the full opportunity to speak to plaintiff's representatives away from the jobsite. He may also address concerns regarding plaintiff's hiring practices to relevant government officials and may continue to organize and advocate in his community. He may also continue to use social media to advance his cause, and is merely restricted from using the Zimmerman analogy with respect to Parker. Although he is barred from entering the jobsite when Parker is present, the court, while not specifically ruling on the point, strongly indicated its view that defendant did not have a legal right to enter the property in the first place. The limitations thus placed are fully justified by the need to protect Parker from defendant's credible threats of violence.

## DISPOSITION

The order is affirmed.

_____
Dondero, J.


We concur:


_____
Margulies, Acting P. J.


_____
Banke, J.

9