Filed 4/27/21  Silverman v. Kinsella CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| MARCUS SILVERMAN, | |
| Plaintiff and Respondent, | E074110 |
| v. | (Super.Ct.No. MVC1908743) |
| PAUL KINSELLA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Eric V. Isaac, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Wagner Zemming Christensen, Marty E. Zemming and Dennis E. Wagner for Defendant and Appellant.

Law Office of Dawn M. Saenz and Dawn M. Saenz for Plaintiff and Respondent.

Paul Kinsella appeals from the trial court's granting of a three-year civil harassment restraining order against him.  (Code Civ. Proc., § 527.6; unlabeled statutory references are to this code.)  We affirm.

1

BACKGROUND

Viewed in the light most favorable to the judgment, the evidence in the appellate record shows the following facts:  In July 2019, Marcus Silverman filed a request for a civil harassment restraining order, seeking protection for himself from Paul.[1]  The court issued a temporary restraining order and referred the matter to mediation, but the mediation was unsuccessful.  A contested hearing was held in September 2019.  Both parties testified on their own behalf, one third party witness testified on behalf of Silverman, and Silverman called Paul as a hostile witness under Evidence Code section 776.

Silverman lives across the street from Dion Denti.  One night in July 2019, Denti hosted a party at his house with over 30 people in attendance, including Silverman.  Silverman encountered Paul and his wife Maria as they arrived at the party.  Silverman knew Maria because she worked at the office of one of Silverman's past clients.  Silverman and Paul were not previously acquainted.

Paul was friends with Denti and worked as an independent contractor for a business Denti operated from his home.  In the five or six months before the hearing (including after the party), Paul worked at Denti's house three to six days per week.  While working at Denti's house, Paul occasionally parked his car in front of Silverman's house.  During an unspecified period before the party, Silverman had noticed Paul "in the neighborhood."

---

[1]    Because we refer to Paul's wife in this opinion and she and Paul have the same last name, we refer to the Kinsellas by their first names only.  No disrespect is intended.

2

As Paul and Maria arrived at the party, Maria and Silverman exchanged greetings and engaged in lighthearted conversation, and she introduced Silverman to Paul. Silverman and Paul said hello to each other.

Later in the evening, Silverman was standing in a patio area where a bar had been set up. He was drinking alcohol and speaking with Erica Hoquist, another guest whom he had just met. Hoquist did not know Silverman or Paul before the party.

Silverman testified that he then initiated a conversation with Paul, remarking that he thought he knew Paul from somewhere. (Hoquist said that Paul approached Silverman and initiated the conversation, but she did not overhear anything the men said because she had turned away to give them privacy.) Paul responded, "You need to stop disrespecting me." Silverman asked Paul what he meant, and Paul reiterated, "I seen you looking at my wife. You need to stop disrespecting me." Silverman denied looking at Maria and attempted to explain to Paul how he knew Maria. Paul again told Silverman to stop disrespecting him. Silverman responded, "whatever, man, you're crazy," and turned and walked away.

After taking several steps, Silverman felt something knock him in the back of the head, and he fell to the ground (a brick patio). Paul then kicked Silverman twice—once in the head and once in the shoulder. Silverman raised his hands defensively. Someone helped Silverman up from the ground, while some men stood between him and Paul as Paul walked away. Before leaving the party, Silverman spoke with Denti, and then two neighbors escorted Silverman home.

Hoquist testified that she saw Paul "[o]ut of nowhere" grab Silverman by the neck and push him to the ground. Paul then kicked Silverman "quite hard" on his neck. Hoquist threw herself between the two men while another man was escorting Paul away from the area. Hoquist helped Silverman stand up.

Paul denied telling Silverman to stay away from Maria or to stop disrespecting him, and he denied attacking Silverman. Paul instead claimed that Silverman had "kind of bear hugged" Paul, causing both men to fall to the ground. According to Paul, no one had restrained him.

The next day, Silverman sought medical treatment. He had various cuts and abrasions, his knee and elbow were swollen, and he could not turn his head. Silverman was diagnosed with a concussion and an injury to his shoulder where it connected to his collarbone. Two months later, Silverman continued to experience medical problems resulting from the attack.

Silverman explained why he believed he needed a restraining order against Paul as follows: "Because I don't think this behavior is like of a normal person. I'm afraid that one night I'll be at a grocery store near our houses or something and the guy will see me in the parking lot or something at night and attack me from behind just like a coward like he did last time." Silverman further explained that it concerned him that Paul knew where Silverman lived and frequented the neighborhood. Silverman explained that because he had been attacked by Paul in his nearby neighbor's yard, Silverman did not "feel safe knowing" that Paul was in his neighborhood and on his street.

After hearing argument from both parties, the trial court granted an injunction requiring Paul to stay at least 10 yards from Silverman's person, residence, vehicle, and workplace for three years, until September 12, 2022. The court found Paul's testimony to be "shaky" and described him as having "lie[d] to the Court." The court set the minimum distance at 10 yards because Silverman's front door is only 70 yards from Denti's, and Paul works at Denti's home. The trial court stated that it was not granting the restraining order on the basis of "a course of conduct" involving threats but instead was granting it on the basis of Paul's violence.

## DISCUSSION

Paul argues that there was insufficient evidence to support the trial court's implied finding that there existed a reasonable probability of future harassment. We are not persuaded.

We review for substantial evidence the trial court's factual findings (express and implied) in granting a civil harassment restraining order. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) Under the doctrine of implied findings, we presume that "the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48.) "We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

5

Section 527.6 provides that a restraining order may issue if a person has suffered harassment as described by the statute. (§ 527.6, subd. (a).) "'Harassment'" is defined as (1) "unlawful violence," (2) "a credible threat of violence," or (3) "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).)

Even if harassment has been shown, a prohibitory "injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 499 (*Harris*); *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 400 (*Russell*).) Accordingly, "a single act of harassment alone cannot justify a restraining order" unless there is a reasonable probability that the harassment will recur. (*Harris*, *supra*, at p. 499; *Russell*, *supra*, at p. 404; *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332-333 (*Scripps*) [applying same standard to workplace violence under § 527.8].) In determining whether the record contains substantial evidence of a reasonable probability that an unlawful act will occur in the future, we consider "'the nature of the unlawful violent act evaluated in the light of the relevant surrounding circumstances of its commission and whether precipitating circumstances continue to exist so as to establish the likelihood of future harm.'" (*Harris*, at pp. 499-500.)

The trial court did not expressly find that there existed a reasonable probability of future harassment. "Absent indication to the contrary, we must presume that the trial court followed the applicable law and understood that it was required to find that future harm was reasonably probable. [Citations.] Given that it issued an injunction, we may

6

infer that the trial court impliedly found that it was reasonably probable that future harassment would occur." (*Harris*, *supra*, 248 Cal.App.4th at pp. 500-501.) Nothing in the record suggests that the trial court misunderstood the law in rendering its ruling, and the parties do not argue that it did. In this vein, the present case differs from *Russell*, *supra*, 112 Cal.App.4th 399, on which Paul relies. There, the appellate court reversed the trial court's order granting an injunction because the trial court erroneously believed that it was *required* to issue an injunction on the basis of a single act of past unlawful violence. (*Id.* at p. 404.)

Here, the relevant circumstances surrounding Paul's unprovoked attack on Silverman support the trial court's implied finding that there was a reasonable probability of the harassment recurring in the future. Because Paul frequently works at Silverman's neighbor's house, it is likely that Paul and Silverman will cross paths again. This inference is further supported by the fact that Silverman had noticed Paul in the neighborhood before the party. (*Harris*, *supra*, 248 Cal.App.4th at p. 501 [implied finding of likelihood of future harassment supported by likelihood that the restrained person and the protected person would have future interactions].) Those facts distinguish the present case from *Scripps*, *supra*, 72 Cal.App.4th 324, on which Paul relies. There, the Court of Appeal concluded that there was not substantial evidence of a reasonable probability of future harm because it was unlikely that the restrained person would again encounter the hospital employees in question after the restrained person's mother changed her health insurance carrier. (*Id.* at p. 336; *Harris*, at p. 500 [distinguishing *Scripps* on this basis].)

7

In addition to containing evidence that it was likely that Paul and Silverman would encounter each other in the future, the record contains no evidence that Paul has expressed any remorse for his actions, that he has come to believe that his jealousy was baseless or unfounded, or that his jealousy has at all abated. Contrary to taking any responsibility for his actions, Paul denied committing any wrongdoing (and the trial court found those denials not credible). Thus, the record supports a reasonable inference that the circumstances that led to Paul's unprovoked attack—namely, Paul's belief that Silverman had in some way disrespected Paul or Maria or both—continue to exist and thus tend to show a reasonable probability of future harassment.

Considering the circumstances surrounding Paul's unprovoked attack on Silverman, we conclude that there was sufficient evidence to support the trial court's implied finding that it is reasonably probable that unlawful harassment was likely to recur in the future absent an injunction.

## DISPOSITION

We affirm the September 12, 2019, order granting the civil harassment restraining order. Silverman shall recover his costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ _____
J.

We concur:

RAMIREZ _____
P. J.
McKINSTER _____
J.

8