Filed 11/14/22  Taha v. Eshagian CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| OLIVIA TAHA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPHINE ESHAGIAN,<br><br>    Defendant and Appellant. | B312167<br><br>(Los Angeles County<br>Super. Ct. No.<br>20STRO05991) |

APPEAL from an order of the Superior Court of Los Angeles County, Christine Byrd, Judge.  Reversed.

Steven T. Lowe for Defendant and Appellant.

Olivia Taha, in pro. per., for Plaintiff and Respondent.

————————————

## INTRODUCTION

What began as an on-line dispute between Josephine Eshagian and Olivia Taha over the Israeli-Palestinian conflict quickly escalated to an exchange of personal insults over social media. After Eshagian "liked" a comment disparaging Taha's physical appearance, Taha made several comments to Eshagian about Zionists and supporters of Israel. After additional exchanges of insults, Eshagian blocked Taha from her social media accounts, which prompted Taha to post on social media personal information about Eshagian, including her name, picture, and religion.

Each woman eventually sought a restraining order against the other. After a four-day hearing, the trial court issued mutual, two-year injunctions under Code of Civil Procedure section 527.6.[1] Eshagian appealed from the restraining order against her; Taha did not appeal from the restraining order against her. We reverse the order against Eshagian.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Eshagian Files a Petition for a Civil Harassment Restraining Order Against Taha*

On September 28, 2020 Eshagian filed a petition for a civil harassment restraining order against Taha. Eshagian claimed Taha "harassed [her] on Facebook for being Jewish" and "wrote more than four abusive comments that included racism and homophobia on [Eshagian's] Facebook posts." Eshagian also alleged Taha commented on Twitter she would "see [Eshagian] in

---

[1]     Statutory references are to the Code of Civil Procedure.

the real world" and "see how tough" Eshagian was when Taha could "confront [her] ass in person." After Eshagian blocked Taha from her social media accounts, Taha posted personal information about, and pictures of, Eshagian and her family.

The trial court issued a temporary restraining order. The temporary restraining order required Taha to stay at least 100 yards from Eshagian; instructed Taha not to "contact or reference [Eshagian], either directly or indirectly, using social media such as Instagram, Twitter, Facebook, or any other social media platforms"; and directed Taha "not [to] post [Eshagian's] name, personal information, face or likeness on any social media." The court also ordered Taha to "delete any personal information of [Eshagian] on any social media platform to which [she had] access or control."

### B. *Taha Files a Petition for a Civil Harassment Restraining Order Against Eshagian*

On November 2, 2020 Taha filed a petition for a civil harassment restraining order against Eshagian. Taha alleged: "Ms. Eshagian has called me ugly, and her close friends made fun of my boyfriend for being Muslim and dressing like a Muslim. Ms. Eshagian has threatened me before." Taha also alleged "Eshagian is . . . an ardent anti-Palestinian Zionist" who "liked" posts of "pro-Israel supporters" and made negative comments on Taha's Facebook and Twitter account. Taha claimed that, "in a Twitter thread about Jeffrey Epstein in mid-September 2020, a known pedophile who was also a Zionist, Ms. Eshagian joined these attacks herself and called me a 'major catfish' (a term indicating that my profile picture on social media is misleading

and that I am ugly)." Taha also claimed Eshagian bragged "about how rich she was."

The trial court denied Taha's request for a temporary restraining order against Eshagian. The trial court ruled Taha's petition failed to state facts that "sufficiently show acts of violence, threats of violence, or a course of conduct that seriously alarmed, annoyed, or harassed" Taha.

C.  *The Trial Court Holds a Hearing on the Petitions*

At the January 15, 2021 hearing on the parties' petitions, Eshagian testified that she was a 31-year old Jewish law student and that she used social media. Eshagian stated she first became aware of Taha on August 30, 2020 from a student organization Facebook post claiming Taha "was harassing Jewish students and she was an anti-Semite." Although Eshagian did not comment on the Facebook post, which asked people to sign a petition asking UCLA and Santa Monica City College to "take action against the Jew hater Olivia Hazin,"[2] Eshagian "liked" one of the comments on the post.

Eshagian testified that, after she "liked" the comment, Taha left four posts on her Facebook concerning Zionists and Eshagian's support for Israel. Eshagian stated that, although there was no further communication between the parties for almost two weeks, on September 12, 2020 she began receiving multiple private messages on her Twitter account from Taha. One of these messages stated: "You're just as crusty as the other Mexican Zionist Jews at UCLA. I bet you don't wash your ass after you use the bathroom either. Ew."

---

[2]     Taha also uses the name Olivia Hazin. Her "real last name," however, is Taha.

4

Although Eshagian did not respond to all of Taha's messages, she "did stand up for [herself] for a couple of them." In one instance, the parties exchanged a series of tweets in which Taha told Eshagian to "tell small dick smelly boy Justin Feldman I said hi." Eshagian wrote back she had "no idea who that is lol seems like someone needs psychological help." Taha responded: "[A]fter I confront your ass in person. Let's see how tough you are. I bet you won't say half the shit you throw on the internet, keyboard warrior. Bye4now." Eshagian responded by asking, "[D]o you usually violently threaten people?"

On September 12, 2020 Eshagian blocked Taha from her Facebook and Twitter account and stopped all communications with her. The next day Taha posted multiple comments about Eshagian that included her picture and personal information, such as Eshagian's ethnicity, her religion, and the law school she attended. Eshagian testified these posts made her "very scared and fearful."[3] After Taha sent an email to Eshagian's law school accusing her of "cyber bulling," Eshagian filed a report with the police department.

On cross-examination Eshagian admitted "the first thing" she said to Taha was that she was "a catfish," which Eshagian

---

[3] Eshagian's therapist testified that before this incident Eshagian's "mood has always been very stable, not a lot of crying . . . . It wasn't until this started and she started talking about the harassment and her fears and how Ms. Taha . . . likes guns, and how she's talking about her online and social media that I saw . . . [Eshagian] for the first time lots of crying [in] emotional sessions."

said meant "someone who misrepresents themselves."[4] When asked why she called Taha a catfish, Eshagian explained it was "because other people have posted photos of you being an anti-Semite on Twitter and Facebook because you're known to attack Jews and you post other photos of yourself that are in no resemblance of those photos that others post."

Taha testified she believed Eshagian was stalking her "based off her comments made toward calling me a catfish, which means a person who looks beautiful on the internet and ugly in person. And so from that definition, I assumed that she had saw me in person because I have been stalked and harassed by similar Zionists to Ms. Eshagian on campus at school." Taha also said that Eshagian had "liked" comments by third parties stating Taha "should deal with her acne first" and that Eshagian said it "[s]ounds like someone [i.e., Taha] is mad [her] monthly car payments costs more than their life."[5]

---

[4] "A 'catfish' is 'a person who sets up a false personal profile on a social networking site for fraudulent or deceptive purposes.'" (*Herrick v. Grindr, LLC* (S.D.N.Y. 2018) 306 F.Supp.3d 579, 584, fn. 1; see *United States v. Ashmore* (A.F. Ct. Crim. App., Mar. 8, 2022, No. ACM 40036) 2022 WL 678895, p. 1, fn. 6 ["'catfishing' is a deceptive activity in which a person creates a fictional online persona to engage in communication with another individual"].)

[5] A forensic document examiner testified that at least one of the tweets purportedly sent by Eshagian to Taha was fraudulent and not sent by Eshagian.

D.  *The Trial Court Issues Two-year Civil Harassment Restraining Orders Against Taha and Eshagian*

The trial court found the testimony of both Eshagian and Taha "lacked credibility in certain respects." The court found "Ms. Taha's harassment against Ms. Eshagian involved far more communications and far more inflammatory language and stretched out over a longer period of time than Ms. Eshagian's harassment against Ms. Taha, but that does not excuse Ms. Eshagian's conduct." The court ruled that each party had "established a claim for harassment by clear and convincing evidence" and that it was "highly likely that harassing conduct by each party will continue unless a restraining order is issued against each party." The court ordered both parties to stay 100 yards from each other and not to "make any online communications or comments to the protected party or about the protected party, either directly or indirectly, including but not limited to posts, hashtags, accessing the . . . party's profile, commenting on anything by the other party, or adding a 'like' or an emoji."

E.  *The Trial Court Denies Eshagian's Motion for a New Trial*

Eshagian moved for a new trial, arguing substantial evidence did not support the restraining order against her. Eshagian argued that Taha, who did not file an opposition to the motion, wanted to dismiss her petition and that the court had denied Taha's request for a temporary restraining order against Eshagian. Eshagian also argued that there was no evidence of a threat of future communications or harassment between the parties and that the few posts Eshagian made "clearly didn't

7

cause nor should it have caused any substantial emotional distress."

The trial court denied the motion. The trial court ruled: "The court's view of the motion is that it views the evidence in the best possible light for [Eshagian], ignoring some evidence and trivializing [Eshagian's] interactions with [Taha], both in numbers, in seriousness, and in [e]ffect on [Taha]. [¶] In argument today, [Eshagian] again claimed that the only acts by [Eshagian] occurred on September 12. That is not accurate. [Eshagian] engaged in actions also on a date in August, the month before, several weeks before. This is representative of the view that the motion is simply looking at the evidence from a narrow perspective and not from the perspective of the entire record." Eshagian timely appealed from the restraining order against her.

## DISCUSSION

A.     *Governing Law and Standard of Review*

"Section 527.6 was enacted 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' [Citations.] It does so by providing expedited injunctive relief to victims of harassment." (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412; see *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 724.) Section 527.6, subdivision (a)(1), provides a "person who has suffered harassment . . . may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section." If the court finds "by clear and convincing evidence that

8

unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).)

"The elements of unlawful harassment, as defined by the language in section 527.6, are as follows: (1) 'a knowing and willful course of conduct' entailing a 'pattern' of 'a series of acts over a period of time, however short, evidencing a continuity of purpose'; (2) 'directed at a specific person'; (3) 'which seriously alarms, annoys, or harasses the person'; (4) 'which serves no legitimate purpose'; (5) which 'would cause a reasonable person to suffer substantial emotional distress' and 'actually cause[s] substantial emotional distress to the plaintiff'; and (6) which is not a '[c]onstitutionally protected activity.'" (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) A course of conduct under section 527.6 includes "following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or computer email." (§ 527.6, subd. (b)(1); see *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497.)

An injunction under section 527.6 restraining future conduct "is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis*, *supra*, 248 Cal.App.4th at p. 499; see *Olson v. Doe* (2022) 12 Cal.5th 669, 678 [""The quick, injunctive relief provided by section 527.6 "lies only to prevent threatened injury"—that is, future wrongs'"—and "'is not intended to punish the restrained party for past acts of harassment'"].) ""The determination of whether it is reasonably probable an unlawful act will [occur] in the future rests upon the nature of the unlawful [harassment] evaluated in the light of the

relevant surrounding circumstances of its commission and whether precipitating circumstances continue to exist so as to establish the likelihood of future harm.""" (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 527; accord, *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 335, fn. 9; see *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 189-190 ["the court could consider any evidence showing a likelihood of future harassment, including evidence of conduct that might not itself constitute harassment"].)

"[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at pp. 1011-1012; see *FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1277 [an injunction must be based on evidence, not speculation]; *Nebel v. Sulak* (1999) 73 Cal.App.4th 1363, 1370 [substantial evidence did not support a restraining order where the evidence did not demonstrate the defendant engaged in

10

threatening or harassing conduct "or did anything other than what he was legally entitled to do"].) "'But whether the facts, when construed most favorably in [the petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6'" is a question of law reviewed de novo. (*Harris v. Stampolis, supra,* 248 Cal.App.4th at p. 497; see *R.D. v. P.M., supra,* 202 Cal.App.4th at p. 188.)

B. *Substantial Evidence Did Not Support the Trial Court's Findings Eshagian's Conduct Would Cause a Reasonable Person, and Actually Caused Taha, Substantial Emotional Distress*

Eshagian argues substantial evidence did not support the trial court's findings (1) she engaged in a knowing and willful pattern or course of conduct; (2) her conduct would cause a reasonable person to suffer, and actually caused Taha to suffer, substantial emotional distress; and (3) Eshagian was likely to harass Taha in the future. Even assuming substantial evidence supported finding (1), substantial evidence did not support findings (2) and (3).

While Eshagian admittedly "liked" comments critical of Taha's appearance, called her a catfish, and made disparaging comments about her socioeconomic status, Eshagian's comments, though perhaps crude, would not cause a reasonable person to suffer substantial emotional distress. Fleeting insults posted on social media about a person's appearance or socioeconomic status, as unwelcome and childish as such comments are, do not cause a reasonable person substantial emotional distress. As Eshagian correctly argues, "there are thousands of tweets written every day that may offend someone; it would unnecessarily open the

11

flood gates for frivolous litigation to find that [her] comments would cause a reasonable person to suffer substantial emotional distress."

In addition, while Taha may have been upset by Eshagian's comments, there was no substantial evidence Taha suffered substantial emotional distress. Although "[s]ection 527.6 does not define the phrase 'substantial emotional distress,'" in "the analogous context of the tort of intentional infliction of emotional distress, the similar phrase 'severe emotional distress' means highly unpleasant mental suffering or anguish 'from socially unacceptable conduct' [citation], which entails such intense, enduring and nontrivial emotional distress that 'no reasonable [person] in a civilized society should be expected to endure it.'" (*Schild v. Rubin*, *supra*, 232 Cal.App.3d at pp. 762-763.) Taha testified she was "very upset" because Eshagian called her a catfish, was "obsessed" with her, and was "still stalking [her] despite having been blocked and going through a court case." That is not enough to show substantial emotional distress. (See § 527.6, subd. (b)(3) ["The course of conduct . . . must actually cause substantial emotional distress to the petitioner."]; *Schild*, at p. 763 [insufficient evidence of substantial emotional distress where there was "no medical, psychological or other evidence in the record that the sounds" coming from the property of petitioners' neighbors, "however offensive and annoying, caused the [petitioners] 'substantial emotional distress,' within the meaning of section 527.6"]; cf. *Harris v. Stampolis*, *supra*, 248 Cal.App.4th at p. 502 [petitioner made a sufficient showing of substantial emotional distress with evidence that "she went to the emergency room and was diagnosed with acute anxiety" and testimony by a police officer that the petitioner "reasonably

12

feared for her safety"]; *Brekke v. Wills, supra*, 125 Cal.App.4th at pp. 1413-1414 [defendant's "socially unacceptable course of conduct" in sending his girlfriend three "vile and vitriolic" letters, which he intended her mother to read and in which he urged his girlfriend to torture and kill her parents and stated he intended to provoke the girlfriend or her father into physically attacking the mother, caused the mother to suffer substantial emotional distress].) Moreover, as the trial court found, Taha posted at least 30 comments about Eshagian after Eshagian blocked Taha from her social medial accounts. Taha's conduct in seeking out and continuing to pursue Eshagian after Eshagian cut off all contact with Taha belied any claim Taha suffered substantial emotional distress.

C. *Substantial Evidence Did Not Support the Trial Court's Finding Eshagian Was Likely To Harass Taha in the Future*

In ruling on the parties' cross-petitions, the trial court found it was "highly likely" that, absent mutual restraining orders, the parties would continue to harass each other. Substantial evidence, however, did not support the finding Eshagian was likely to continue harassing Taha.

Eshagian "liked" a comment on August 30, 2020 and engaged in several heated exchanges with Taha on September 12, 2020. After that, however, Eshagian disengaged and took steps to avoid any future communications or interaction with Taha, harassing or otherwise. On September 12, 2020 she blocked Taha from her social media accounts and made no further efforts to contact Taha, even though Taha posted more than 30 comments about Eshagian on social media. (See *Yost v.*

13

*Forestiere, supra*, 51 Cal.App.5th at pp. 520, 527 [the "quick, injunctive relief provided by section 527.6" lies only "to prevent threatened injury and has no application to wrongs that have been completed"]; *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 401 [same]; *Scripps Health v. Marin*, *supra*, 72 Cal.App.4th at pp. 332-333 [for a workplace violence restraining order under section 537.8, which contains "parallel provisions to section 527.6," "not only can injunctive relief be denied where the defendant has voluntarily discontinued the wrongful conduct [citation], there exists no equitable reason for ordering it where the defendant has in good faith discontinued the proscribed conduct"]; see also *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 513 [to "'authorize the issuance of an injunction, it must appear with reasonable certainty that the wrongful acts will be continued or repeated'"].) It is unlikely Eshagian's and Taha's virtual paths will cross again. (See *Scripps*, at p. 336 [restraining order under section 527.8 reversed where "the evidentiary record [did] not establish the likelihood [the appellant] would repeat any violent acts against [the respondent's] employees"]; cf. *City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 531-532, 542-543 [substantial evidence supported a finding of likely future harassment under section 527.8 where the appellant, who threatened a city staff member, "continued to appear regularly at City Hall" and had a "history of threatening conduct"].)[6]

---

[6] In her respondent's brief, Taha asserts, without citing the record, "Eshagian remains stalking Olivia online and in real life," "continues invading Taha's space indirectly through friends," and "has made a goal to silence Taha by smearing Taha's public

## DISPOSITION

The order granting a restraining order against Eshagian is reversed. Eshagian is to recover her costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

---

image." A reviewing court, however, may not consider such factual assertions in a party's brief that are not supported by citations to the record. (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 845, fn. 6.)