Filed 10/4/24  San Ramon Valley Unified School District v. J.H. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>J.H.,<br><br>      Defendant and Appellant. | A169135<br><br>(Contra Costa County Super. Ct. No. N23-0983)<br><br>**ORDER MODIFYING OPINION; AND ORDER DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

The opinion filed September 20, 2024, is modified as follows:

(1)     Delete footnote 4 on page 11 that currently states:

In her opening brief, J.H. argued that her tweets were protected speech because they were not directed at any School District employee. But she conceded in her reply that an indirect threat qualifies as a true threat that is not protected by the First Amendment.  We therefore do not address this argument.

(2)     After the last full paragraph on page 12, add the following new paragraphs:

In her opening brief, J.H. argued that her tweets were protected speech because they were not directed at any School District employee. But she conceded in her reply that an indirect threat qualifies as a true threat that is not protected by the First Amendment.  In her petition for rehearing, J.H. argues that we misinterpreted her concession and

1

that her indirect threats were protected by the First Amendment because they were not directed at anyone associated with the School District. We already rejected this argument when we concluded that J.H.'s tweets, when viewed in context, placed a reasonable person working at her former high school in fear for their safety. (See, ante, at pp. 6-7.)

In her petition for rehearing, J.H. also reiterates that there was no evidence "that she intended to communicate any threats to any school employee." We reject this argument on the merits. In *In re A.G.* (2020) 58 Cal.App.5th 647, the defendant posted a temporary "story" on Snapchat to his 60 followers (*id.* at p. 653) that included a photo of a gun with the caption, " 'Everybody go to school tomorrow. I'm taking gum [sic]' " (*id.* at p. 651). A few hours later, he posted on Snapchat that his first story " 'wasn't real' " and that he was " 'xanned out.' " (*Ibid.*) Based on these facts, the defendant argued that he did not intend to communicate a threat to anyone at his former high school. (*Id.* at p. 656.) The court of appeal disagreed, concluding that the defendant, by posting on Snapchat, "intended many people to see it," including a former classmate who still attended the school. (*Id.* at p. 657.) The court further concluded that the defendant "must have been aware that anyone who saw it might feel threatened" and "send it to others." (*Ibid.*) Here, there is even stronger evidence that J.H. intended to communicate her threats to a School District employee. J.H. had approximately 400 twitter followers, including her twin sister who also graduated from the high school and knew about her longstanding animosity toward the school and some of her former classmates. Under these circumstances, J.H. could hardly be surprised that some of her followers would be alarmed by her tweets and send them to a School District employee. Accordingly, there is ample evidence that J.H. intended to threaten "an expansive group of people, which included" School District employees. (*Ibid.*)

This order does not effect a change in the judgment.

Appellant J.H.'s October 1, 2024 petition for rehearing is denied.

CHOU, J.

WE CONCUR:

SIMONS, ACTING P.J.
BURNS, J.
*San Ramon Valley Unified School District v. J.H. (A169135)*

2

Filed 9/20/24  San Ramon Valley Unified School District v. J.H. CA1/5 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT,<br><br>        Plaintiff and Respondent.,<br><br>v.<br><br>J.H.,<br><br>        Defendant and Appellant. | A169135<br><br>(Contra Costa County Super. Ct. No. N23-0983) |

Defendant J.H. appeals from the trial court's order granting a workplace violence restraining order (WVRO) in favor of plaintiff and respondent San Ramon Valley Unified School District (School District).  The order was issued after J.H.'s twin sister contacted the police regarding tweets J.H. had posted online, including one stating that she was " 'the next school shooter.' "  J.H. contends that the trial court erred in granting the restraining order because there was no clear and convincing evidence that J.H.'s tweets constituted credible threats of violence or that J.H. presented a threat of violence in the future.  J.H. also argues that her tweets were protected by the First Amendment to the United States Constitution.  We disagree and affirm.

## I.  BACKGROUND

### A.  Facts

J.H. graduated from a high school within the School District (high school) in 2016.  On May 25, 2023, R.H., J.H.'s twin sister, left a voicemail for

1

Officer Meagan Morales, the high school's resource officer, to report J.H.'s plan to "commit, basically, a mass shooting at [the high school]." During their call later that same day, R.H. told Officer Morales that J.H. was involuntarily hospitalized in Massachusetts but that she could be released any day. J.H. lived near the high school but traveled to Massachusetts often, where she previously attended college. R.H. also told Officer Morales that during her conversation with J.H. the day before, J.H. stated that she recently visited the high school to assess how to commit a mass shooting.[1]

Following their call, R.H. emailed Officer Morales screenshots of J.H.'s tweets, among other documents. In several tweets between 2021 and 2023, J.H. wrote about negative experiences she had in high school, including getting suspended. And in three tweets from May 16, 2023, J.H. wrote: (1) "I'm the next school shooter. Get ready. I'm going on Criminal Minds: Evolution;" (2) "I'll kill you all;" and (3) "I'm a terrorist. The government has officially classified me as a terrorist." In her report, Officer Morales noted that R.H. was "concern[ed] over [J.H.]'s mental health and [R.H.]'s desire for [the police] to take her report seriously, since [she] felt she had not been taken seriously by law enforcement in the past." Following the call, Officer Morales contacted the high school's principal (principal) regarding J.H. The School District's Director of Communications and Community Relations (Director), was also made aware of J.H.'s tweets. The Director discussed these tweets with Officer Allan Shields (Chief of Police), and he recommended that she obtain a restraining order against J.H.

On June 1, 2023, the School District filed a petition for a WVRO and

---

[1] During their May 24, 2023 recorded call, J.H. told R.H. that she looked into the high school's security "for [her] musical" and that she was acting as an inspector in scoping out the high school because she "want[ed] to stop school shootings."

2

obtained a temporary restraining order against J.H. On June 6, after learning about the temporary restraining order, R.H. emailed Officer Morales and other law enforcement to clarify that J.H. never directly *named* the high school as the target of a mass shooting. R.H. stated that she assumed J.H. would target the high school because it was one of the two schools she attended. R.H. also stated that J.H. walking on the high school's campus "is not odd behavior by itself" because she lived within walking distance and had "gone to that track many times over the years." Finally, R.H. emphasized that she was "not against the restraining order" but was "against an order that relies on false facts."

B. <u>Court Trial</u>

At the trial as to the issuance of the WVRO, the School District called three witnesses: Chief Shields, the principal, and J.H.

Chief Shields testified that he reviewed J.H.'s tweets about being the next school shooter and suggested to the Director that the School District get a restraining order against J.H. Chief Shields also testified that he listened to a portion of the recorded phone call between J.H. and R.H. and did not hear J.H. say that she would shoot up the high school.

The principal testified that Officer Morales told him about threats J.H. made on social media about a school shooting. Although the principal was concerned, he decided to continue with the high school's graduation ceremony on campus because police would be there and because J.H. was in Massachusetts at the time. The principal conceded that he did not receive any threats directly from J.H. but testified that he had reviewed J.H.'s tweets. He also conceded that J.H.'s tweet about being " 'the next school shooter' " did not mention the high school.

3

J.H. testified that when she posted, " 'I'm the next school shooter,' " she was "manic" and "was referencing Criminal Minds Evolution as a TV show" because she "wanted to be an actor." J.H. then testified that she was "not a violent person" and that she "would never cause a mass shooting" or "become a school shooter." According to J.H., she had been hospitalized a number of times after she moved back to California in January 2023. When she moved back to Massachusetts later that year, she experienced a manic episode after she "started another protest and . . . drank a lot." J.H. had experienced a similar cycle of events in October 2022 when she was in Massachusetts; she stopped taking her medications, started drinking heavily, and then experienced a manic episode when she stopped drinking.

J.H. admitted that she "said some things on Twitter [she] shouldn't have" but claimed that R.H. "overreacted" and "called 911." The day after her May 16, 2023 tweets, J.H. testified that she was visited by emergency medical personnel and police. She told the police that she did not believe that she was threatening anyone and that she was "just in the mindset of protesting, having fun, making jokes." Nonetheless, the police decided to involuntarily commit J.H. to the hospital. She completed a seven-week treatment program and was discharged from the hospital after her treating doctor reported that her psychiatric symptoms were "resolved."[2] Finally, J.H. testified that she has never committed a violent act and has never owned or possessed a firearm.

---

[2] J.H. submitted a declaration by this doctor that the trial court reviewed. In the declaration, the doctor stated that J.H. exhibited symptoms of mania and psychosis but denied having any thoughts or plans to commit homicide. He did not believe that J.H. posed a danger of committing any acts of violence in the future when he discharged her on June 29, 2023.

4

J.H. called her brother as her only witness.  Her brother testified that R.H. was concerned that hospitals kept releasing J.H. before her symptoms of mania and delusions had been adequately treated.  He also testified that R.H. was frustrated and "willing to lie" so J.H. could get the treatment she needed.  He admitted, however, that R.H. never told him that she had lied to the police.

At the conclusion of the witnesses' testimony, the trial court asked why the School District did not call R.H. to testify.  The School District's counsel responded that R.H. had changed her story after the petition was filed.  Following closing arguments, the court granted a three-year WVRO.  J.H. timely appealed.

## II.  DISCUSSION

### A.  Sufficiency of the Evidence

Under Code of Civil Procedure[3] section 527.8, an "employer, whose employee has suffered . . . a credible threat of violence . . . that can reasonably be construed to be carried out . . . may seek a [WVRO] after hearing on behalf of the employee and, at the discretion of the court, any number of other employees at the workplace, and, if appropriate, other employees at other workplaces of the employer."  (§ 527.8, subd. (a).)  A " '[c]redible threat of violence' " is a "knowing and willful statement or course of conduct that would place a reasonable person in fear for their safety, or the safety of their immediate family, and that serves no legitimate purpose." (*Id.*, subd. (b)(2).)  "If the judge finds by clear and convincing evidence that the respondent . . . made a credible threat of violence, an order shall issue prohibiting further . . . threats of violence."  (*Id.*, subd. (j).)

---

[3] All further statutory references are to the Code of Civil Procedure.

On appeal from a WVRO, we review the record for substantial evidence "to determine whether the trial court 'could have found it highly probable' that [a defendant] made a 'credible threat of violence' against [the plaintiff]." (*Technology Credit Union v. Rafat* (2022) 82 Cal.App.5th 314, 323; citing *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.) In doing so, "we resolve all factual conflicts and questions of credibility in favor of the prevailing party and draw all reasonable inferences in support of the trial court's findings." (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 538.)

J.H. contends that there was insufficient evidence that she made a credible threat of violence or that she presented a threat of future violence. As explained below, we reject both contentions.

1.  *Credible Threat of Violence*

J.H. argues that she did not make a credible threat of violence against her former high school located within the School District (high school) or its employees because her tweets neither mentioned the school nor were they directed at any of the school's employees. J.H. also argues that the tweets were not " 'convincing' " evidence that she actually intended to commit a shooting at the high school. After considering all of the relevant facts in the light most favorable to the WVRO, we are not persuaded. J.H.'s tweets and her twin sister's actions and reports in response to those tweets support the trial court's finding that it was highly probable that J.H.'s conduct placed a reasonable person in fear for their safety.

First, J.H.'s tweets, by themselves, established a credible threat of violence to the high school. In those tweets, she repeatedly expressed her animosity toward the school and her former classmates over a roughly two-year period. Indeed, several of her tweets referenced her desire to take

6

revenge on the school as well as her former classmates. Viewed in the context of these earlier tweets, the trial court reasonably concluded that J.H.'s subsequent tweets that she was "the next school shooter" and that she would "kill you all" placed a reasonable person working at her former high school in fear for their safety.

Second, R.H., J.H.'s twin sister, reported to the police that based on J.H.'s tweets, her conversations with J.H., and her knowledge of J.H. and J.H.'s mental health issues, she was concerned that J.H. was planning to commit a mass shooting at the high school. Indeed, R.H. made online posts immediately after J.H.'s tweets threatening a mass shooting stating that those tweets "should be taken seriously." More notably, R.H. told the police that J.H. recently went to the high school's campus to assess how to commit a mass shooting. Based on these actions by and reports of J.H.'s sister, who admittedly knew her well, there was more than enough evidence to support the trial court's finding that J.H. made a credible threat of violence.

J.H.'s attacks on this evidence are unavailing because we must resolve all questions of credibility and draw all reasonable inferences in favor of the WVRO. (*City of San Jose v. Garbett*, *supra*, 190 Cal.App.4th at p. 538.) Thus, while J.H. testified at trial that she "was protesting" when she made these tweets, we must assume for purposes of appeal that the trial court did not find her testimony to be credible. Likewise, we must assume that the court did not credit J.H.'s claim that she looked into the high school's security for her "musical" and that she "want[ed] to stop school shootings." Indeed, the court was understandably skeptical of J.H.'s explanation when she admitted to her sister just one week after tweeting that she was going to be "the next school shooter" that she had gone to the high school to assess its security and vulnerability to a shooting.

7

Finally, R.H.'s attempt to recant or qualify some of her earlier statements after the issuance of the temporary restraining order does not alter our conclusion. R.H. did tell the police that J.H. never directly said that she planned to commit a mass shooting at the high school. But R.H. also maintained that she personally believed if J.H. was going to carry out a mass shooting, her target would be the high school or one other school that she had attended. R.H. further maintained that she was "not against the restraining order." Given the limited nature of these qualifications to her prior statements and the failure of R.H. to testify, the trial court understandably gave little weight to her attempt to recant. In any event, the court was free to give more weight to R.H.'s earlier statements that she believed J.H. was planning to commit a shooting at the high school.

Accordingly, there is substantial evidence to support the trial court's finding that J.H. made a credible threat of violence against the high school.

### 2. *Probability of Future Threat of Violence*

J.H. argues that the WVRO was unwarranted because any threat that she posed to the high school had dissipated by the time of the trial. We disagree and find that J.H.'s history of repeated relapses following her hospitalizations supported the trial court's conclusion that J.H. continued to present a threat of violence to the high school at the time of the trial.

To obtain a WVRO, a "plaintiff must establish not only that [the] defendant . . . made a credible threat of violence, but also that great or irreparable harm would result to an employee without issuance of the prohibitory injunction." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 327 (*Scripps*).) In other words, the plaintiff must show a "reasonable probability the wrongful acts will be repeated in the future" "without issuance of the prohibitory injunction." (*Id*. at p. 331.) These wrongful acts

8

may include both "further unlawful violence or the threat thereof." (*Id.* at p. 332.)

J.H. argues that any credible threat of violence had dissipated by the time of trial because she had received extensive mental health treatment during her hospitalization—which "resolved" her psychiatric symptoms—and because her doctor did not believe that she posed a threat of violence upon her discharge–which was approximately two months before trial. J.H. further argues that the School District did not present any evidence to rebut this. But J.H.'s arguments do not account for the standard of review on appeal, which requires that "we resolve all factual conflicts and questions of credibility in favor of the prevailing party[.]" (*City of San Jose v. Garbett, supra*, 190 Cal.App.4th at p. 538.)

Here, J.H.'s own testimony as well as her brother's testimony and her twin sister's email to the police supported the trial court's finding that J.H. still posed a credible threat of violence in the future. That evidence established a troubling pattern where J.H. would be hospitalized for acute psychiatric symptoms, including the symptoms that presumably led to her threatening tweets, and would relapse soon after her release, necessitating another round of hospitalization and treatment.

For example, J.H. testified that she had been hospitalized for mental health issues at least seven times over the past three to four years. Indeed, she admitted to suffering from delusions as recently as her last hospitalization less than four months earlier, when she posted the threatening tweets. She further admitted that she "made the school shooting tweet" when she was "suffering from a severe mental health crisis which included psychosis, mania, and delusions." Her brother confirmed that J.H. had been in and out of hospitals over the past several years and testified that

9

she would be released each time before her symptoms resolved.  Finally, R.H., in an email to the police, stated that J.H. bragged about deceiving her doctors in order to get released from the hospital.  According to R.H., J.H., upon her release and consistent with her past behavior, would probably not continue treatment or take her medications.  As a result, J.H. would likely exhibit the same mental health issues that led to her threats of violence against the high school soon after her release.  Based on this pattern of behavior, the trial court reasonably found clear and convincing evidence that J.H. would continue to present a credible threat of violence in the future notwithstanding her most recent hospitalization and treatment.

*Scripps, supra,* 72 Cal.App.4th 324, does not compel a contrary conclusion.  In *Scripps*, the defendant, whose mother was a patient at the plaintiff's facility, "pulled [a] door open, striking [the plaintiff's employee] with the door and pushing her into the wall" when that employee blocked the defendant from leaving the room.  (*Id.* at p. 328.)  In reversing the WVRO, the court of appeal found no substantial evidence that the defendant was likely to commit further acts of violence against the plaintiff's employees because by the time of trial, the defendant's mother had switched her health insurance provider so she was unlikely "to return as a patient to" the plaintiff's facility.  (*Id.* at p. 336.)  As a result, it was unlikely that the defendant "would repeat any violent acts against [the plaintiff's] employees." (*Ibid*.)  By contrast, J.H. regularly walked to the high school's campus— which was near her family's primary residence—making her return to the campus far more likely.  More notably, there was ample evidence that the psychiatric symptoms that led to J.H.'s threatening tweets may recur in the future based on J.H.'s troubling pattern of behavior in recent years.  Accordingly, we find that substantial evidence supports the trial court's

10

finding that J.H. continued to pose a credible threat of violence to the high school.

B. Protected Speech

Alternatively, J.H. argues that her tweets were protected speech under the First Amendment to the United States Constitution because they did not constitute a true threat.[4] We disagree. When viewed in context and in light of the surrounding circumstances, a reasonable reader would understand J.H.'s tweets to be a true threat.

True threats are not protected by the First Amendment. (*Counterman v. Colorado* (2023) 600 U.S. 66, 72-74; *Virginia v. Black* (2003) 538 U.S. 343, 359 (*Black*).) " 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." (*Black*, at p. 359.) Thus, any "threatening statement[] that a reasonable listener would understand, in light of the context and surrounding circumstances, to constitute a true threat" is not protected speech. (*People v. Lowery* (2011) 52 Cal.4th 419, 427.) Finally, the speaker need not intend to or have the ability to carry out the threat imminently in order for it to be a true threat. (*Id*. at p. 428.)

"[W]hen a challenged finding implicates the First Amendment, the reviewing court conducts an independent review of the record as an added safeguard against infringement of constitutional rights." (*People v. Peterson* (2023) 95 Cal.App.5th 1061, 1066.) Independent review however, "is not the

---

[4] In her opening brief, J.H. argued that her tweets were protected speech because they were not directed at any School District employee. But she conceded in her reply that an indirect threat qualifies as a true threat that is not protected by the First Amendment. We therefore do not address this argument.

11

equivalent of de novo review 'in which a reviewing court makes an original appraisal of all the evidence to decide whether or not it believes' the outcome should have been different.  [Citation.]  Because the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review, nor are findings of fact that are not relevant to the First Amendment issue." (*In re George T.* (2004) 33 Cal.4th 620, 634.)

Accordingly, we independently review the record to determine whether J.H.'s tweets constituted a true threat but defer to the trial court's credibility determinations.  Based on our review, we find that a reasonable employee of the School District would understand J.H.'s statements, in light of the context and surrounding circumstances, to be a true threat.  J.H. tweeted about the high school and her negative experiences there at least 24 times between February 2021 to March 2023.  Her primary family residence is within walking distance of the high school, and J.H. has frequently walked to the campus in the past.  After expressing considerable animosity toward her high school and former classmates for two years, J.H. tweeted, "I'm the next school shooter" and "I'll kill you all."  She then told R.H., her twin sister, a week later that she recently went to the high school's campus to scope out its security to see how difficult it would be for a school shooter to infiltrate the school.  R.H. also posted online that J.H.'s threatening tweets should be taken seriously and that they were not just posted randomly or for attention.  Under these circumstances, a reasonable person would understand J.H.'s tweets to constitute a serious expression of her intent to commit unlawful violence.  Those tweets therefore constituted true threats that are not protected by the First Amendment.

C.  Vagueness Challenge

J.H. argues in a footnote to her opening brief that the WVRO is void for vagueness and lacks specificity because it ordered her to stay away from all of the School District's sites and property.  But J.H. forfeited this issue by failing to identify it with a proper heading.  (See *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"].)  J.H. also forfeited the issue by failing to raise it below.  (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 699.)  Our ruling does not, however, preclude J.H. from requesting a subsequent modification to the scope of the WVRO.  (See § 527.8, subd. (k)(1) [WVRO is "subject to termination or modification by further order of the court . . . on the motion of a party"].)

## III.  DISPOSITION

The judgment is affirmed.

CHOU, J.

WE CONCUR:

SIMONS, ACTING P.J.
BURNS, J.

*San Ramon Valley Unified School District v. J.H. (A169135)*

13